**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**ADAM J. ZUCKERMAN,**

**Plaintiff,**

**v.** **CASE NO:**

**UNITED SERVICES AUTOMOBILE ASSOCIATION,**

**Defendant.**
______________________________________________/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, ADAM J. ZUCKERMAN, (hereinafter "Plaintiff" or "Mr. Zuckerman"), a Florida resident, by and through the undersigned counsel, hereby sues Defendant, UNITED SERVICES AUTOMOBILE ASSOCIATION (hereinafter "Defendant," "USAA," or "Company") and alleges:

## INTRODUCTION

1. The Plaintiff brings this action against Defendant, his former employer, seeking to recover damages for unlawful discrimination based on disability, failure to accommodate, and retaliation in violation of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12101 et seq., and its implementing Regulations.

2. As further set forth below, Plaintiff alleges that Defendant unlawfully discriminated against him, altered the terms, conditions, and privileges of his employment because of his disability, failed to provide reasonable accommodations for his disability, and retaliated against him for requesting and receiving reasonable accommodations in violation of his rights under the ADA.

3. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered actual damages: loss of income, loss of opportunity for future income, loss of benefits, and loss of future pay increases. In addition, he has suffered and continues to suffer loss of his professional and personal reputation, emotional distress, mental anguish, embarrassment, and humiliation.

4. Plaintiff has incurred costs and attorney's fees in bringing this matter.

## JURISDICTION AND VENUE

5. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5.

6. This Court has jurisdiction to grant declaratory relief, declare the rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7. Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. All facts and circumstances arising from this dispute took place in Hillsborough County, Florida.

**PARTIES**

8. Plaintiff is ADAM J. ZUCKERMAN, a 49-year-old male who has been diagnosed with Attention-Deficit/Hyperactivity Disorder (ADHD), Major Depressive Disorder, and Generalized Anxiety Disorder, conditions that substantially limit one or more major life activities, including concentration, executive functioning, task initiation and completion, and stress tolerance. Plaintiff resides in Wesley Chapel, Florida.

9. Plaintiff is a member of a class protected against discrimination

and retaliation based on his disability under the ADA.

10. Defendant employed Plaintiff for approximately eight years, until his termination on March 17, 2026.

11. At all times material herein, Plaintiff met the definitions of "employee" and "eligible employee" under all applicable federal statutes.

12. At all times material herein, Plaintiff was an employee entitled to protection as defined by the ADA.

13. The Defendant, UNITED SERVICES AUTOMOBILE ASSOCIATION, is an organization with its principal place of business located at 9800 Fredericksburg Road, San Antonio, Texas 78288, and regularly conducts business at 17200 Commerce Park Blvd, Tampa, FL 33647, Hillsborough County, Florida.

14. At all times material herein, Defendant regularly conducted, and continues to conduct, business throughout Hillsborough County, Florida, and employed fifteen or more employees.

15. At all times material herein, Defendant met, and continues to meet, the definitions of "employer" under all applicable federal statutes including, but not limited to, the ADA.

16. Accordingly, Defendant is liable under the ADA for the

unlawful discrimination, failure to accommodate, and retaliation to which it subjected Plaintiff.

## ADMINISTRATIVE PREREQUISITES

17. Plaintiff has properly exhausted all administrative prerequisites prior to filing the instant lawsuit.

18. On or about April 25, 2026, Plaintiff timely dual filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") against Defendant alleging, among other things, disability discrimination and retaliation.

19. On September 12, 2026, the EEOC issued Plaintiff a Determination and Notice of Rights in reference to his Charge of Discrimination (EEOC Charge No. 511-2026-03060) against Defendant.

20. This action is being filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue from the EEOC.

21. All conditions precedent to bringing this action have been performed or have occurred.

## GENERAL ALLEGATIONS

22. Plaintiff has been diagnosed with ADHD, Major Depressive

Disorder, and Generalized Anxiety Disorder, conditions that substantially limit one or more major life activities, including concentration, executive functioning, task initiation and completion, and stress tolerance.

23. Plaintiff is under the care of Dr. Maulik K. Trivedi, MD, a board-certified psychiatrist, and is prescribed Vyvanse 60mg for ADHD, Desvenlafaxine 150mg for anxiety, and Fluvoxamine 50mg for depression, the last of which was added specifically due to severe panic attacks triggered by interactions with his supervisor and his supervisor's direct report.

24. Plaintiff worked for Defendant for approximately eight years before his termination on March 17, 2026.

25. From 2017 through 2023, Plaintiff was a high performer at USAA under supervisor Christy Jones, who was aware of his disability. Ms. Jones communicated expectations clearly and consistently, which allowed Plaintiff to perform successfully without the need to formally address his disability. During his tenure, Plaintiff received increasing responsibility, was promoted into a leadership role in 2020, led significant strategic initiatives, and was entrusted to present his work to the highest levels of the Company, including USAA's Chief Executive Officer and the President of Property and Casualty. Although Plaintiff's 2022 review reflected areas for development

during his transition into a first-time people-leadership role, his subsequent reviews reflected improvement and satisfactory performance through 2024. Plaintiff was also regularly recognized as one of the strongest product development professionals in the organization, as reflected in his annual and mid-year performance reviews.

26. In 2023, following a reorganization, Plaintiff began reporting to Ben Potter. Shortly after the reorganization was announced, Plaintiff and Mr. Potter met alone for a one-on-one dinner intended in part as a "get to know you" meeting. In describing his professional history and how he had learned to succeed at USAA, Plaintiff expressly disclosed that he had ADHD, explained that he processes information differently, and told Mr. Potter that he sometimes needed additional clarity regarding expectations.

27. Throughout Plaintiff's tenure under Mr. Potter, and well before any formal performance plan, Plaintiff repeatedly sought coaching, actionable feedback, clarity regarding expectations, and guidance concerning how his success was being measured. Plaintiff also proactively prepared an operating model describing how Product Development and Product Management could work together, but Mr. Potter did not meaningfully engage with it or provide the requested guidance.

28. From that point forward, Mr. Potter's treatment of Plaintiff was markedly different from how Mr. Potter treated other members of his leadership organization whom he had personally hired or developed. Plaintiff's work was minimized and ignored, his ideas were given to others, he was excluded from key meetings and strategy sessions, expectations shifted without notice, and he was consistently made to appear ineffective to senior leadership.

29. Feedback from Mr. Potter, when given at all, was almost exclusively negative. Plaintiff's one-on-one meetings were routinely disrupted by Mr. Potter's inattention, including looking at his phone or email while Plaintiff was speaking. Mr. Potter also frequently moved or canceled meetings, arrived approximately fifteen minutes late to thirty-minute meetings, and then ended the meetings because of another commitment or "hard stop," materially limiting Plaintiff's opportunity to obtain the coaching, feedback, and clarity he had repeatedly requested.

30. Over time, the hostile environment caused Plaintiff's disability symptoms to escalate significantly. Plaintiff developed high blood pressure and began experiencing severe panic attacks before meetings involving Mr. Potter or Julia Hornack, with the most severe attacks occurring before one-

on-one meetings with Mr. Potter because Plaintiff anticipated negative feedback or having his concerns ignored.

31. Plaintiff repeatedly told Mr. Potter that he was struggling, including by sending Mr. Potter literature on how to support employees with his conditions.

32. In or around August 2025, Mr. Potter hired Julia Hornack as an Assistant Vice President who worked alongside Plaintiff as part of Mr. Potter's leadership team. Plaintiff did not report to Ms. Hornack. Mr. Potter admitted to Plaintiff that he had specifically tasked Ms. Hornack with identifying "opportunities" on projects Plaintiff had led for more than two years.

33. Ms. Hornack systematically questioned decisions that had been made and approved months prior, forcing significant rework for which Mr. Potter then held Plaintiff accountable.

34. In October 2025, Ms. Hornack sent Mr. Potter an email falsely characterizing Plaintiff's performance and conduct. Plaintiff responded with a point-by-point rebuttal supported by emails, texts, and Slack messages disproving each allegation, and he explicitly told Mr. Potter that he was struggling and needed his help.

35. Rather than acknowledging Plaintiff's request for support or engaging with any of the evidence Plaintiff provided, Mr. Potter placed Plaintiff on a Performance Improvement Plan (PIP).

36. Plaintiff met every PIP objective within the given timeframe, with a week to spare, and documented all approvals and conversations.

37. Mr. Potter nonetheless declined to remove Plaintiff from the PIP, claiming vague dissatisfaction with the pace of buy-in on one or two items, notwithstanding that Plaintiff satisfied the stated deadlines.

38. In January 2026, Plaintiff formally initiated the ADA accommodation process.

39. Plaintiff's accommodation was approved on February 2, 2026, and included remote work, use of AI note-taking tools for Zoom calls, and the requirement that Mr. Potter follow up meetings with written expectations.

40. Mr. Potter never once complied with the written-expectations requirement, a critical accommodation for Plaintiff's disability, during the entire period between the approval of the accommodation and Plaintiff's termination.

41. Thirty business days after the accommodation letter issued, on

March 17, 2026, Mr. Potter terminated Plaintiff by phone, accompanied by HR representative Janine Modgling.

42. When Plaintiff asked for the basis for his termination, Mr. Potter cycled through three or four shifting rationales, each of which Plaintiff was able to rebut in real time.

43. When Plaintiff raised that one stated reason, that he "didn't understand the expectations," was directly attributable to Mr. Potter's failure to provide the written follow-up required under Plaintiff's ADA accommodation, Ms. Modgling responded: "The decision has been made. The reason isn't relevant."

44. As a direct result of his termination, Plaintiff has suffered quantifiable losses, including forfeiture of an annual bonus of approximately $43,200, loss of severance of approximately $82,800, loss of 401(k) matching contributions of approximately $7,200, loss of an annual pension contribution of approximately $5,400, and cancellation of his health insurance.

45. Plaintiff is now barred from future employment at USAA, and his termination, occurring while on a PIP, must be disclosed to prospective employers, materially impairing his ability to find comparable employment.

46. The manner in which USAA terminated Plaintiff's systems access also subjected him to humiliating and embarrassing circumstances in front of his team and peers.

47. At all times relevant herein, Plaintiff was a qualified individual with a disability who could perform the essential functions of his position, with or without reasonable accommodation.

48. Defendant's actions were motivated by discriminatory animus based on Plaintiff's disability and constituted unlawful discrimination, failure to accommodate, and retaliation for Plaintiff's exercise of rights protected under the ADA.

## COUNT I
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
## Disability Discrimination
## 42 U.S.C. §§ 12101-12213

48. Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in Paragraphs 1 through 48 of this Complaint as though fully set forth herein.

49. At all times material herein, Defendant employed Plaintiff and was an "employer" within the meaning of the ADA.

50. At all times material herein, Plaintiff was a qualified individual

with a disability within the meaning of the ADA in that he had a mental impairment that substantially limited one or more major life activities and he could perform the essential functions of his position with or without reasonable accommodation.

51. Following Plaintiff's disclosure of his disability to his supervisor, Ben Potter, in 2023, Defendant subjected Plaintiff to adverse and disparate treatment because of his disability.

52. That treatment included minimizing and ignoring Plaintiff's work, reassigning his ideas to others, excluding him from key meetings and strategy sessions, shifting expectations without notice, providing exclusively negative feedback, and making him appear ineffective to senior leadership, in contrast to the treatment of peers outside Plaintiff's protected class.

53. Defendant further subjected Plaintiff to a Performance Improvement Plan and, on March 17, 2026, terminated Plaintiff's employment.

54. Defendant took the foregoing actions against Plaintiff because of Plaintiff's disability.

55. Defendant's conduct constituted unlawful discrimination against Plaintiff on the basis of disability in violation of the ADA.

56. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered damages, including lost wages and benefits, lost earning capacity, emotional distress, mental anguish, humiliation, loss of dignity, and other pecuniary and non-pecuniary losses.

**WHEREFORE**, Plaintiff, ADAM J. ZUCKERMAN, demands trial by jury on all issues so triable as of right, and respectfully requests judgment against Defendant, UNITED SERVICES AUTOMOBILE ASSOCIATION, and the following relief:

1. A declaration that Defendant violated the ADA by discriminating against Plaintiff because of his disability;
2. Back pay, front pay, lost benefits, and other equitable and monetary relief sufficient to make Plaintiff whole;
3. Compensatory damages as allowed by law;
4. Pre-judgment and post-judgment interest as allowed by law;
5. Reasonable attorneys' fees, costs, and expenses as allowed by law; and
6. Such other and further relief as the Court deems just and proper.

**COUNT II**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**Failure to Accommodate**
**42 U.S.C. §§ 12101-12213**

57. Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in Paragraphs 1 through 48 of this Complaint as though fully set forth herein.

58. At all times material herein, Defendant employed Plaintiff and was an "employer" within the meaning of the ADA.

59. At all times material herein, Plaintiff was a qualified individual with a disability who could perform the essential functions of his position, with or without reasonable accommodation.

60. In January 2026, Plaintiff formally initiated the ADA accommodation process and requested reasonable accommodations for his disability.

61. On February 2, 2026, Defendant approved Plaintiff's accommodations, which included remote work, use of AI note-taking tools for Zoom calls, and the requirement that Mr. Potter follow up meetings with written expectations.

62. The requirement that Mr. Potter follow up meetings with

written expectations was a reasonable accommodation that would have enabled Plaintiff to perform the essential functions of his job.

63. Despite having approved the accommodation, Defendant, through Mr. Potter, never once complied with the written-expectations requirement during the entire period between the approval of the accommodation and Plaintiff's termination.

64. Defendant's failure to provide the approved and agreed-upon accommodation constituted a failure to accommodate Plaintiff's disability in violation of the ADA.

65. Defendant then relied upon Plaintiff's purported failure to "understand the expectations," a circumstance directly attributable to Defendant's own failure to provide the required written follow-up, as a basis for terminating Plaintiff's employment.

66. As a direct and proximate result of Defendant's failure to accommodate, Plaintiff has suffered damages, including lost wages and benefits, lost earning capacity, emotional distress, mental anguish, humiliation, loss of dignity, and other pecuniary and non-pecuniary losses.

**WHEREFORE**, Plaintiff, ADAM J. ZUCKERMAN, demands trial by jury on all issues so triable as of right, and respectfully requests judgment

against Defendant, UNITED SERVICES AUTOMOBILE ASSOCIATION, and the following relief:

1. A declaration that Defendant violated the ADA by failing to provide Plaintiff with a reasonable accommodation for his disability;
2. Back pay, front pay, lost benefits, and other equitable and monetary relief sufficient to make Plaintiff whole;
3. Compensatory damages as allowed by law;
4. Pre-judgment and post-judgment interest as allowed by law;
5. Reasonable attorneys' fees, costs, and expenses as allowed by law; and
6. Such other and further relief as the Court deems just and proper.

**COUNT III**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**Retaliation**
**42 U.S.C. §§ 12101-12213**

67. Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in Paragraphs 1 through 48 of this Complaint as though fully set forth herein.

68. At all times material herein, Defendant employed Plaintiff and was an "employer" within the meaning of the ADA.

69. Plaintiff engaged in protected activity under the ADA by

requesting and receiving reasonable accommodations for his disability, including by formally initiating the ADA accommodation process in January 2026 and obtaining approval of his accommodations on February 2, 2026.

70. Defendant knew of Plaintiff's protected activity.

71. After Plaintiff engaged in protected activity, Defendant subjected Plaintiff to materially adverse actions, including failing to provide the agreed-upon accommodations, continuing to subject him to a hostile work environment, and terminating his employment on March 17, 2026, thirty business days after the accommodation letter issued.

72. The adverse actions taken against Plaintiff were materially adverse in that they would dissuade a reasonable employee from engaging in protected activity under the ADA.

73. There is a causal connection between Plaintiff's protected activity and Defendant's materially adverse actions, as demonstrated by, among other things, the temporal proximity between Plaintiff's accommodation request and the adverse actions, and Defendant's shifting and pretextual explanations for Plaintiff's termination.

74. Defendant's conduct constituted unlawful retaliation against Plaintiff in violation of the ADA.

75. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered damages, including lost wages and benefits, lost earning capacity, emotional distress, mental anguish, humiliation, loss of dignity, and other pecuniary and non-pecuniary losses.

**WHEREFORE**, Plaintiff, ADAM J. ZUCKERMAN, demands trial by jury on all issues so triable as of right, and respectfully requests judgment against Defendant, UNITED SERVICES AUTOMOBILE ASSOCIATION, and the following relief:

1. A declaration that Defendant violated the ADA by retaliating against Plaintiff for engaging in protected activity;
2. Back pay, front pay, lost benefits, and other equitable and monetary relief sufficient to make Plaintiff whole;
3. Compensatory damages as allowed by law;
4. Pre-judgment and post-judgment interest as allowed by law;
5. Reasonable attorneys' fees, costs, and expenses as allowed by law; and
6. Such other and further relief as the Court deems just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff respectfully requests a trial by jury.

Date this 19th day of September 2026.

*/s/ Jason W. Imler, Esq*
Jason W. Imler
Florida Bar No. 1004422
Alberto "Tito" Gonzalez
Florida Bar No. 1037033
**Imler Law**
23110 State Road 54, Unit 407
Lutz, Florida 33549
(P): 813-553-7709
Jason@ImlerLaw.com
Tito@ImlerLaw.com
Ashley@ImlerLaw.com
Tiffany@ImlerLaw.com